**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,
Amber Barhan*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER BARHAM,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIUMS EDUCATION LLC D/B/A AIDVANTAGE; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ. (FCRA)**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate re-porting, promote efficiency in the banking system, and protect consumer privacy. The

1. FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Plaintiff Amber Barham ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of Maxiums Education LLC d/b/a Aidvantage ("Adivantage"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax"), (together, the "Defendants") for violations of the FCRA, which caused Plaintiff damages.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. Defendants failed to properly investigate Plaintiff's disputes, and reported inaccurate credit information damaging Plaintiff's creditworthiness.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendants took place in Orange County, State of California.

8. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises out of Defendant's violations of federal law.

11. Because Defendants conduct business within the State of California, personal jurisdiction is established.

12. Venue is proper for the following reasons: (i) Experian resides in Orange County, which is within the judicial district; (ii) the conduct and harm complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES

13. Plaintiff is a natural person residing in Indianapolis, State of Indiana, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14. Defendant Aidvantage is an official servicer of Federal Student Aid doing business in the State of California, with a principal place of business in Reston, Virginia.

15. Defendant Aidvantage is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

16. Defendant Experian is a national credit reporting agency, and Ohio corporation, doing business in California, with a principal place of business in California.

17. Defendant Equifax is a national credit reporting agency, and Georgia limited liability company, doing business in California, with a principal place of business in Georgia.

18. Defendant Trans Union is a national credit reporting agency, and Delaware limited liability company doing business in California, with a principal place of business in Illinois.

19. Defendants Experian, Trans Union, and Equifax, regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish reports and are each a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

20. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## GENERAL ALLEGATIONS

21. At all times relevant, Defendants conducted business in the State of California.

22. Prior to June 2024, Plaintiff incurred certain financial obligations to the Department of Education and Aidvantage, which were student loans (the "Student Loans").

23. On June 20, 2024, the Student Loans were discharged in bankruptcy through an adversary proceeding in the U.S. Bankruptcy Court in the Southern District of Indiana. Adversary Proceeding # 23-50053; Lead Bankruptcy Case #: 23-01802-JMC-7.

### Defendants Misreported Plaintiff's Credit Information

24. In October of 2024, Plaintiff checked her credit report and was shocked to see that Defendants were still reporting the Student Loans on Plaintiff's credit reports despite the Student Loans being discharged in the bankruptcy adversary

proceedings.

25. Specifically, Defendants were reporting the Student Loans as open and with account balances.

26. Defendants reported, or caused to be reported, inaccurate information and derogatory information on Plaintiff's credit reports, including but not limited to the representation that the Student Loans were "open" and that a balance was still owed on the Student Loans.

27. Plaintiff properly disputed Defendants' reporting of the Student Loans, but Defendants continued to report inaccurate and derogatory information on Plaintiff's credit report, as detailed below.

28. In an Equifax Information Services, LLC ("Equifax") credit report dated October 4, 2024, Defendants inaccurately reported the Student Loans, as follows:

| Furnisher Name | Account Number | Reported Balance |
|---|---|---|
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0130 | $5,261 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0210 | $1,592 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0230 | $746 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0230 | $1,750 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0220 | $3,150 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0130 | $2,803 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0150 | $669 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0210 | $3,112 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0160 | $3,633 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0220 | $1,750 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0160 | $7,197 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0210 | $1,754 |
| Dept of Ed/Aidvantage | xxxxxxxxxxxxxxxx 0210 | $1,555 |

29. In an Experian Information Solutions, Inc. ("Experian") credit report dated October 4, 2024, Defendants inaccurately reported the Student Loans, as follows:

| Furnisher Name | Account Number | Reported Balance |
|---|---|---|
| Dept of Ed/Aidvantage | 94447414351E0012013…. | $5,290 |

| Dept of Ed/Aidvantage | 94447414351E0022013…. | $2,334 |
|---|---|---|
| Dept of Ed/Aidvantage | 94447414351E0032015…. | $607 |
| Dept of Ed/Aidvantage | 94447414351E0052016060116…. | $3,658 |
| Dept of Ed/Aidvantage | 94447414351E0062016060116…. | $7,240 |
| Dept of Ed/Aidvantage | 94447414351E0072021021721…. | $1,599 |
| Dept of Ed/Aidvantage | 94447414351E0082021051821…. | $1,555 |
| Dept of Ed/Aidvantage | 94447414351E0092021081121…. | $1,754 |
| Dept of Ed/Aidvantage | 94447414351E0102021081121…. | $3,130 |
| Dept of Ed/Aidvantage | 94447414351E0112022081122…. | $1,750 |
| Dept of Ed/Aidvantage | 94447414351E0122022081122…. | $3,174 |
| Dept of Ed/Aidvantage | 94447414351E0132023061523…. | $1,750 |
| Dept of Ed/Aidvantage | 94447414351E0142023061523…. | $711 |

30. In a Transunion, LLC ("Transunion") credit report dated October 4, 2024, Defendants inaccurately reported the Student Loans, as follows:

| **Furnisher Name** | **Account Number** | **Reported Balance** |
|---|---|---|
| Dept of Ed/Aidv | 94447414351E0012013**** | $5,261 |
| Dept of Ed/Aidv | 94447414351E0022013**** | $2,803 |
| Dept of Ed/Aidv | 94447414351E0032015**** | $669 |
| Dept of Ed/Aidv | 94447414351E0052016060116**** | $3,633 |
| Dept of Ed/Aidv | 94447414351E0062016060116**** | $7,197 |
| Dept of Ed/Aidv | 94447414351E0072021021721**** | $1,592 |
| Dept of Ed/Aidv | 94447414351E0082021051821**** | $1,555 |
| Dept of Ed/Aidv | 94447414351E0092021081121**** | $1,754 |
| Dept of Ed/Aidv | 94447414351E0102021081121**** | $3,112 |
| Dept of Ed/Aidv | 94447414351E0112022081122**** | $1,750 |
| Dept of Ed/Aidv | 94447414351E0122022081122**** | $3,150 |
| Dept of Ed/Aidv | 94447414351E0132023061523**** | $1,750 |
| Dept of Ed/Aidv | 94447414351E0142023061523**** | $746 |

31. This was inaccurate since the Student Loans had been discharged in bankruptcy adversary proceedings on June 20, 2024. Therefore, Defendants' reporting of the Student Loans with a balance owed was inaccurate.

32. On or about February 7, 2025, Plaintiff disputed Defendants' reporting regarding the Student Loans pursuant to 15 U.S.C. § 1681i by notifying Equifax, Experian and Transunion (the "CRAs"), separately, in writing, of the incorrect and inaccurate credit information furnished by Aidvantage and reported by the CRAs.

33. Specifically, Plaintiff sent a letter, via certified mail with return receipt, to the CRAs, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected on Plaintiff's credit report.

34. The letter specifically told the CRAs that the reporting of the Student Loans was inaccurate and that the balances being reported were also incorrect due to the bankruptcy discharge.

35. On information and belief, upon receiving the dispute letters, the CRAs timely notified Aidvantage of Plaintiff's dispute as required by 15 U.S.C. § 1681i(a)(2).

36. Aidvantage was required to conduct an investigation into the Student Loans on Plaintiff's consumer credit report pursuant to 15 U.S.C. § 1681s-2(b).

37. The CRAs were required to conduct a reinvestigation into the Student Loans on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

38. A reasonable investigation by Defendants would have indicated that the Student Loans had been discharged in bankruptcy proceedings and that no balance remained owed.

39. Defendants failed to review all relevant information provided by Plaintiff in the disputes to the CRAs, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

40. Defendants verified and re-reported the inaccurate derogatory information on Plaintiff's credit report. Specifically, Defendant re-reported the Student Loans exactly as they were reported in the October 4, 2024 credit reports.

41. This was inaccurate since the Student Loans had been discharged in bankruptcy

proceedings. Therefore, Defendants' reporting of the Student Loans with a balance owed was inaccurate.

42. Defendants, upon receipt of Plaintiff's disputes, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

43. Due to Defendants' failure to reasonably investigate Plaintiff's disputes, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

44. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting of the Student Loans by communicating Plaintiff's dispute with Defendant were fruitless.

45. Defendants' continued inaccurate and negative reporting on the Student Loans in light of its knowledge of the actual errors was willful.

46. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

47. As a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to her creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

48. By inaccurately reporting account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

///
///
///

### *Inaccurate Credit Reporting and Reporting Standards*

49. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

50. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

51. On information and belief, Defendants adopted and at all times relevant implemented Metro 2.

52. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

53. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting inaccurate information regarding Plaintiff's Student Loans.

54. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

55. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

   i. credit or insurance to be used primarily for personal, family, or household purposes;

   ii. employment purposes; or

   iii. any other purpose authorized under section 1681b.

56. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

57. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at

least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

58. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports

59. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

60. Defendants' departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer damages from reduced FICO credit scores.

### *Credit Scoring*

61. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

62. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

63. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of

accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

64. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

65. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

66. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

67. Here, inaccurately reporting the Student Loans as open, with a balance owed, when it was in fact discharged in bankruptcy proceedings, adversely affects Plaintiff's FICO score.

68. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

69. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/

### *Defendants' Failures and Plaintiff's Damages*

70. It is inaccurate to report an account as open and with a balance when it was in fact discharged in bankruptcy proceedings, and not owed.

71. Reporting that an account is still owed is detrimental to a consumer's credit reputation.

72. As evidenced by Defendants' failures to correct the reporting of the Student Loans at issue despite receiving accurate information from Plaintiff showing the Student Loans were discharged in bankruptcy proceedings, Defendants each failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

73. As evidenced by the inaccurate re-reporting, Defendants each failed to conduct an investigation or reinvestigation upon receipt of Plaintiff's dispute with respect to the disputed information related to the accounts stated above as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

74. Defendants each failed to review all relevant information and documents provided by Plaintiff with her disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

75. Due to Defendants' failure to reasonably investigate, Defendants each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

76. Defendants continued inaccurate and derogatory reporting of the accounts in light of their knowledge of the errors was knowing willful. Plaintiff is, accordingly, eligible for statutory damages.

77. Also as a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, invasion of

privacy, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and Plaintiff has suffered loss of personal time and worry, fear, stress, anxiety, and sleeplessness.

78. Creating the false impression that the Student Loans are open and owing creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports engaged in judgment-based lending.

79. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

80. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

81. By inaccurately reporting account information after notice from Plaintiff, Defendants each failed to take the appropriate measures in violation of the FCRA and as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

## CAUSES OF ACTION

## Violations of the Fair Credit Reporting Act

## 15 U.S.C. §§ 1681 *et seq*. (FCRA)

*[Against All Defendants]*

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. The foregoing acts and omissions of Defendants constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

84. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each of the Defendants.

85. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each of the Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### Violations of the Fair Credit Reporting Act
### 15 U.S.C. §§ 1681 *et seq.* (FCRA)
### *[Against All Defendants]*

- An award of actual damages against Defendants, each of them, pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages against Defendants, each of them, pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages against Defendants, each of them, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- An award of costs of litigation and reasonable attorney's fees against Defendants, each of them, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) for each incident of negligent noncompliance of the FCRA; and

- Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

86. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Date: June 23, 2025

                                  Respectfully submitted,

                                **KAZEROUNI LAW GROUP, APC**

                            By: */s/ Gustavo Ponce*
                                David McGlothlin, Esq.
                                Mona Amini, Esq.
                                Gustavo Ponce, Esq.
                                *Attorneys for Plaintiff*